NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PATRICIA ANN ACOSTA, *Appellant*.

No. 1 CA-CR 19-0071
FILED 10-8-2019

Appeal from the Superior Court in Mohave County
No. S8015CR201701104
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

_____

**C A M P B E L L**, Judge:

¶1   Patricia Ann Acosta appeals from her conviction and sentence for hindering prosecution in the first degree. After searching the record on appeal and finding no arguable question of law, Acosta's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), asking this Court to search the record for reversible error. This Court granted counsel's motion to allow Acosta to file a pro per supplemental brief, but she has not done so. Having reviewed the entire record, we find no reversible error and affirm Acosta's conviction and sentence.

**BACKGROUND**

¶2   While conducting routine predawn patrol, Officer Scott Grigsby observed a speeding vehicle and initiated a traffic stop. When he checked the driver's license with dispatch, he learned that the license had been suspended and, as required by law, the vehicle had to be towed.

¶3   Shortly thereafter, Officer Christopher Fletcher arrived at the scene to identify the four passengers in the vehicle while Officer Grigsby attended to the driver. With relative ease, Officer Fletcher confirmed with dispatch the identities provided by three of the passengers, but dispatch had no record of the fourth passenger, who identified himself as Randy Ramon Acosta and provided a September 24, 1989 birthdate.

¶4   While Officer Fletcher spoke with dispatch, the passenger in question used his cell phone to make a call. After briefly talking on the phone, "Randy" handed his cell phone to Officer Fletcher and invited him to speak with his grandmother. When Officer Fletcher took the phone, a woman stated that she was Randy's grandmother and provided his birthdate as September 23, 1989. When Officer Fletcher provided this modified birthdate to dispatch, he received the same result—that no record of such a person existed.

¶5        Approximately 20 minutes later, the defendant arrived at the scene of the traffic stop and told Officer Fletcher, in person, that "Randy" was her grandson. Eventually, dispatch recovered information for a Randy Ramon Acosta born on September 23, 1988. When Officer Fletcher questioned the defendant and "Randy" about the birthdate discrepancies, they both appeared confused and failed to provide "a straight answer."

¶6        Nonetheless, believing that "Randy" had been properly identified, Officer Fletcher permitted him to leave the scene with the defendant. A short time later, however, Officer Fletcher viewed two pictures, one of the Randy Ramon Acosta associated with the September 1988 birthdate and one of Ryan Acosta. Upon viewing the photographs, Officer Fletcher immediately concluded that the man he had spoken with at the traffic stop was Ryan Acosta, not Randy. After this discovery, Officer Fletcher ran a warrant check and learned that Ryan Acosta had multiple felony warrants for his arrest.

¶7        Based on this new information, Officer Fletcher drove to the defendant's residence and contacted her at the front door of her home. After activating a portable audio recording device, Officer Fletcher told the defendant that he knew Ryan had been the passenger in the traffic stop and asked to speak with him. In response, the defendant told the officer that Ryan had already left, stating he had jumped out of a back bedroom window. When the defendant did not dispute Ryan's identity, Officer Fletcher asked her why she had lied to him and she explained that Ryan had asked her to lie because he was afraid to go to jail. She denied, however, any actual knowledge of the outstanding warrants for his arrest.

¶8        The State charged the defendant with one count of hindering prosecution in the first degree (Count 1) and one count of reporting false information to a law enforcement officer (Count 2). Upon the State's motion, however, the superior court dismissed Count 2.

¶9        At trial, the defendant testified on her own behalf. On direct examination, she stated that she had been sleeping when she was startled awake, shortly before 1:30 a.m., by Ryan's phone call. Explaining she felt quite "dazed," she did not realize that the individual she identified as her grandson Randy was actually her grandson Ryan until she drove him home after he had been released at the scene. On cross-examination, however, the defendant admitted that she had lied when she identified Ryan as "Randy," but denied any knowledge that Ryan had outstanding felony- arrest warrants.

**¶10**      The jury convicted the defendant as charged. At sentencing, the superior court placed the defendant on probation for a one-year period. The defendant timely appealed.

## DISCUSSION

**¶11**      We have reviewed the entire record for revisable error and find none. Acosta received a fair trial. She was represented by counsel at all stages of the proceedings and was present at all critical stages.

**¶12**      The State presented substantial evidence that supports the verdict. The jury was properly comprised of eight members and the court correctly instructed the jury on the elements of the charges, Acosta's presumption of innocence, the State's burden of proof, and the necessity of a unanimous verdict. The superior court received and considered a presentence report, Acosta was given an opportunity to speak at sentencing, and her sentence was within the range of acceptable sentences for her offense.

## CONCLUSION

**¶13**      We affirm Acosta's conviction and sentence. Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, her obligations are fulfilled once she informs Acosta of the outcome of this appeal and her future options. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Acosta has 30 days from the date of this decision to proceed, if she wishes, with a pro per motion for reconsideration or petition for review.

